UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CHRISTOPHER O'CONNER,<br><br>Plaintiff,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY, a Delaware corporation,<br><br>Defendant. | Case No. 3:21-cv-00057-LRH-CLB<br><br>ORDER |

Before the Court is Defendant Union Pacific Railroad Company's ("Union Pacific") motion for summary judgment, or, in the alternative, partial summary judgment on the issue of whether 29 C.F.R. § 1910.177 is applicable to this matter. ECF No. 50. Plaintiff Christopher O'Conner ("O'Conner") filed a response in opposition to the motion (ECF No. 51) and Union Pacific replied (ECF No. 52). Also before the Court is Union Pacific's request for an evidentiary hearing. ECF No. 50 at 1. First, the Court denies Union Pacific's request for a hearing. Second, and for the reasons articulated herein, the Court grants in part and denies in part Union Pacific's motion in accordance with this Order.

I.   **BACKGROUND**

This matter arises out of an employee's workplace related injury. The following facts are undisputed by the parties: in April 2018, Union Pacific—a common carrier by railroad in interstate commerce—hired O'Conner as a laborer in Elko, Nevada. *Compare* ECF No. 50-1 *with* ECF No. 51-1. Towards the end of November 2019, O'Conner visited an emergency room physician who diagnosed him with bronchial pneumonia and provided him with a doctor's note so that he could be placed on "light duty" at work until December 14, 2019. *Id*. Union Pacific subsequently placed O'Conner on light duty and primarily assigned him the task of driving the crew into the field for

work at which point he was instructed to remain in the truck so that he would not do anything extra given his light duty status.[1] *Id*. On December 11, 2019, three-days before his light duty assignment was set to expire, Union Pacific assigned O'Conner the task of removing a tire from a backhoe and transporting it to a tire-repair shop for maintenance. *Id*.

O'Conner alleges the following as to the backhoe tire removal and transportation task he was assigned: after using equipment to raise the backhoe tire an inch or two off the ground, he removed the lug nuts and slid the tire from its hub at which point it fell to the ground and onto its side. ECF No. 50-10 at 21–25. He then attempted to stand the tire upright with its treads on the ground so that he could roll it closer to the truck. *Id*. at 25. To do so, O'Conner squatted next to the tire and wedged his hands underneath it and attempted a lift but the tire did not move. *Id*. at 25–27. When he attempted the lift, O'Conner heard a loud noise come from his shoulder followed by an immediate rush of pain in his arm. *Id*. at 26, 27. Shortly after, O'Conner utilized an overhead crane to stand the tire upright, drove the truck closer to the tire, and used the crane to place the tire into the truck. *Id*. at 29, 30. Once loaded, O'Conner transported the tire to the tire-repair shop. *Id*. at 31. After the incident, O'Conner required surgery on his shoulder and, eventually, O'Conner and Union Pacific ended their employment relationship. ECF No. 51 at 13, 14.

On January 26, 2021, O'Conner filed a complaint against Union Pacific in which he claims that Union Pacific's conduct violated the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60, *et seq*. ("FELA"). ECF No. 1 at 2. O'Conner argues that his employer breached and negligently failed to perform its duty to provide him with a reasonably safe place to work. *Id*. at 3. In breaching that duty, O'Conner specifically alleges that Union Pacific breached and negligently failed to perform other duties including but not limited to (1) the duty to implement reasonably safe methods and procedures for O'Conner to complete assigned tasks; (2) the duty to properly train and educate him on how to complete assigned tasks; and (3) the duty to provide adequate assistance for his

---

[1] While the fact that O'Conner was placed on light duty is undisputed, the meaning of "light duty" is somewhat disputed by the parties. According to Union Pacific, when an employee is placed on light duty it means that the employee is not physically capable of performing their full capabilities which sometimes includes a weightlifting limit prescribed by the employee's doctor. ECF No. 50-11 at 4, 5. According to O'Conner, an employee placed on light duty has a weight-lifting restriction of ten pounds. ECF No. 51-1 at 3.

performance of the task he was assigned on this particular occasion. *Id*. On August 8, 2023, Union Pacific filed its motion for summary judgment. *See generally* ECF No. 50. The motion alternatively seeks partial summary judgment on the issue of Union Pacific's alleged violation of 29 C.F.R. § 1910.177 as Union Pacific believes that the regulation is inapplicable given the facts. *Id*. at 20. Union Pacific's motion is addressed below.

## II.  LEGAL STANDARD

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)); *see also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the nonmoving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material

fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. "The mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient" to establish a genuine dispute; "there must be evidence on which the jury could reasonably find for the [party]." *Id.* at 252.

"A moving party without the ultimate burden of persuasion at trial … has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must produce either evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id.*

### III.  DISCUSSION

In its motion, Union Pacific requests that the Court grant summary judgment in its favor based upon the following: (1) O'Conner cannot establish FELA liability because there is no evidence that Union Pacific could have reasonably foreseen O'Conner would attempt to lift the backhoe tire without assistance; (2) O'Conner cannot meet his burden of proving causation because his own negligence is the sole cause of his injury; and (3) O'Conner's improper training theory rests on an alleged violation of 29 C.F.R. § 1910.177 which is not applicable to Union Pacific as an employer and unrelated to his sustained injury. ECF No. 50 at 2.

FELA was enacted to combat the inherent dangers and injuries that railroad employees experience by virtue of their work. *See Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 542–43 (1994). Under FELA,

> [e]very common carrier by railroad while engaging in commerce between any of the several States … shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce … for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. In the Ninth Circuit, it is well-settled that "FELA provides the sole and exclusive remedy for injured employees of railroad carriers engaged in interstate commerce." *Wildman v.*

*Burlington N. R. Co.*, 825 F.2d 1392, 1395 (9th Cir. 1987). To establish FELA liability, district courts in the Ninth Circuit require an employee-plaintiff to show the elements of common law negligence. *See, e.g.*, *Gilmore v. Union Pac. R. Co.*, Case No. CIV-S-09-2180 KJM, 2011 WL 3236060, at *4 (E.D. Cal. July 26, 2011); *see also Glow v. Union Pac. R. Co.*, 652 F. Supp. 2d 1135, 1141 (E.D. Cal. 2009). Thus, O'Conner must establish that: (1) Union Pacific owed a duty of care to him; (2) Union Pacific breached that duty; (3) Union Pacific's breach was the legal cause of his injury; and (4) O'Conner suffered damages. *See Momox-Caselis v. Donohue*, 987 F.3d 835, 847 (9th Cir. 2021) (citing *Scialabba v. Brandise Const. Co., Inc.*, 921 P.2d 928, 930 (Nev. 1996)).

As a preliminary matter, the parties majorly dispute whether relaxed standards apply to negligence and causation determinations in FELA cases. ECF No. 51 at 16; ECF No. 52 at 4–6. To survive summary judgment as the non-moving party, O'Conner "must offer sufficient evidence of both negligence and causation by any railroad employee." *Mullahon v. Union Pac. R.R.*, 64 F.3d 1358, 1363 (9th Cir. 1995) (citation omitted). The Supreme Court, however, has explained that the causation standard of proof in FELA cases is more lenient than in ordinary negligence actions. *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 506–08 (1957) (stating that judges in FELA cases are to appraise the proofs presented and determine whether, with reason, the employer's negligence played *any part* at all in the injury of the employee not whether the employer's negligence was the sole proximate cause of the injury (*emphasis* added)). Consistent with the Supreme Court, the Ninth Circuit has stated that "[t]he standard for receiving a jury trial is less stringent in FELA cases than in common law tort cases[.]" *Mullahon*, 64 F.3d at 1363. While railroad-employers do not insure against all accidents and FELA-plaintiffs bear the burden of proving negligence, the Ninth Circuit has routinely required only "slight" or "minimal" evidence "to raise a jury question of negligence" in FELA cases. *Mendoza v. S. Pac. Transp. Co.*, 733 F.2d 631, 632–33 (9th Cir. 1984) (citations omitted)); *see also Smith v. Union Pac. R.R. Co.*, 671 F. App'x 556, 557 (9th Cir. 2016) (confirming that only slight or minimal evidence is required to raise a jury question of negligence in FELA actions (citation omitted)). As to jury findings in FELA cases, the Ninth Circuit has similarly stated "it is only necessary that the jury's conclusion be one which is *not outside the possibility of reason* on the facts and circumstances shown."

*Mendoza*, 733 F.2d at 633 (*emphasis* added). The relevant inquiry here then is whether the proofs presented by O'Conner justify, with reason, the conclusion that Union Pacific's negligence played any part, even the slightest, in causing his injury. *See Rogers*, 352 U.S. at 506.

The Supreme Court has stated that FELA imposes a duty on railroads "to use reasonable care in furnishing its employees with a safe place to work." *Atchison, Topeka & Santa Fe Railway Co. v. Buell*, 480 U.S. 557, 558 (1987). A railroad-employer's liability is "determined under the general rule which defines negligence as the lack of due care under the circumstances[.]" *Tiller v. Atlantic Coast Line R.R. Co.*, 318 U.S. 54, 67 (1943). The Supreme Court has also explained that a railroad-employer's duty is "measured by what is reasonably foreseeable under like circumstances." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 703 (2011). This is also true in the Ninth Circuit where the test for foreseeability "does not require that the negligent person should have been able to foresee the injury in precise form in which it in fact occurred. Rather it is sufficient if the negligent person might reasonably have foreseen that an injury may occur." *Mullahon*, 64 F.3d at 1364. Thus, reasonable foreseeability of harm is an essential ingredient of a FELA negligence claim. *Gallick v. Baltimore & Ohio R. Co.*, 372 U.S. 108, 117 (1963).

Union Pacific concedes that it owed O'Conner a duty of care to provide a safe place to work. ECF No. 50 at 12, 13. Union Pacific disputes, however, whether it breached that duty. ECF No. 50 at 12–14. Specifically, Union Pacific claims that it did not breach that duty because it was not reasonably foreseeable that O'Conner would attempt to lift the backhoe tire alone when mechanical equipment like the overhead crane and additional crew-member manpower was at his disposal. *Id*. at 14, 15. In response, O'Conner argues that it was reasonably foreseeable that he could be injured removing the backhoe tire because the railroad knew that he was on light duty, and that he had no training in removing and transporting a backhoe tire. ECF No. 51 at 17. In reply, Union Pacific argues that the backhoe tire removal task was consistent with O'Conner's light duty assignment and reiterates that his behavior was completely unforeseeable. ECF No. 52 at 10.

A railroad breaches its duty when it fails to do "what a reasonable and prudent man would ordinarily have done under the circumstances of the situation" or by "doing what such a person under existing circumstances would not have done." *Tiller*, 318 U.S. at 67. Here, O'Conner has

provided evidence that Union Pacific knew of his diagnosis and, as a result, placed him on light duty which primarily included a non-lifting crew-driving assignment up until December 11, 2019. Union Pacific should have reasonably foreseen that an injury might occur to O'Conner if he was assigned any lifting task before his light duty assignment expired on December 14, 2019, let alone a lifting-task that required him to remove and transport a several-hundred-pound tire. Possible injury to O'Conner is even more reasonably foreseeable here because, although O'Conner received several safety certifications through Union Pacific, he was never trained in nor instructed on how to remove backhoe tires. These facts alone could justify, with reason, the conclusion that Union Pacific breached its duty to provide O'Conner with a reasonably safe place to work. However, such determination of whether assigning O'Conner the backhoe tire removal task while he was on light duty status was what a reasonable and prudent man would have ordinarily done is a question of fact for the jury. *See Liberty Lobby*, 477 U.S. at 255 (explaining that the Court's function at summary judgment is not to weigh the evidence and draw conclusions from facts, but rather to determine whether genuine factual disputes for trial exist). Here, a genuine issue for trial exists because it is certainly "not outside the possibility of reason" that a jury might conclude Union Pacific could have reasonably foreseen an injury to O'Conner.

Union Pacific also argues that O'Conner cannot meet his burden of proof as to causation because his own negligence was the sole cause of his injury. ECF No. 50 at 18. As explained by the Ninth Circuit, "FELA authorizes recovery of compensatory damages—including pain and suffering—when the employer's negligence played any part, even the slightest, in producing the injury." *Law v. Gen. Motors Corp.*, 114 F.3d 908, 912 (9th Cir. 1997) (internal quotations and citations omitted). As previously noted, in FELA negligence cases, a relaxed standard of causation applies, distinct from common law proximate cause, and the only causation inquiry is whether the employer's negligence played a part, no matter how small, in bringing about the injury. *See McBride*, 564 U.S. at 703–05. "It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence." *Oglesby v. S. Pac. Transp. Co.*, 6 F.3d 603, 607 (9th Cir. 1993).

///

Here, O'Conner has offered evidence suggesting that Union Pacific's negligence played a part in bringing about his injury. In addition to the light duty and no training evidence already noted, O'Conner also produced evidence that while on light duty his previous assigned tasks were only crew-driver and, when assigned this task, he remained uninjured. Only after he was assigned the tire-removal task was O'Conner injured as evidenced by his reporting the injury to several people including Union Pacific employees and the tire-repair shop. Furthermore, Union Pacific employees had never removed or observed the removal of a backhoe tire, including the one Union Pacific claims was available to assist him with the task. Lastly, O'Conner's Supervisor and crewmate testified that Union Pacific typically uses outside companies to change backhoe tires, not backhoe operators such as O'Conner. Under these facts, a reasonable juror could certainly conclude that it was "not outside the possibility of reason" that Union Pacific's negligence played any part in bringing about O'Conner's injury—an injury he sustained while carrying out the assigned task and an injury he likely would never have sustained if he was assigned the crew-driver task he had consistently been assigned over the previous days while on light duty. *See Taylor v. Burlington Northern Railroad Co.*, 787 F.2d 1309, 1313 (reiterating that an employee can recover damages from a railroad-employer under FELA "if the employer's negligence played *any* part in producing the injury, no matter how slight" (*emphasis* original) (citations omitted)).

Because O'Conner has produced sufficient evidence meeting the FELA-specific slight or minimal proof standard for receiving a jury trial as to negligence and causation, and because duty and damages are undisputed, O'Conner has raised genuine issue of material fact as to whether Union Pacific was negligent and whether that negligence played any part in bringing about his injury. Therefore, summary judgment is not appropriate here and Union Pacific's motion is denied.[2] *See Armstrong v. Burlington Northern R. Co.*, 139 F.3d 1277, 1279 (9th Cir. 1998) (reversing the district court's grant of summary judgment for a railroad-employer because the

---

[2] The Court's finding today is an extension of Congress's intended purpose for enacting FELA. "By enacting FELA, Congress wanted to secure jury determinations in a larger proportion of cases than would be true of ordinary common law actions." *Mendoza*, 733 F.2d at 633 (internal quotation marks and citations omitted). As such, jury trials were intended to be part of the FELA remedy. *Id.* (citing *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines*, 369 U.S. 355, 360 (1962)).

plaintiff-employee satisfied the "minimal proof" required "to show negligence" in her FELA case). Accordingly, the Court finds that an evidentiary hearing on the motion is not needed.

In the alternative, Union Pacific asks the Court to grant partial summary judgment on the issue of O'Conner's alleged 29 C.F.R. § 1910.177 violation because it believes that the regulation is not applicable here as a matter of law. ECF No. 50 at 18–20. In support of its argument, Union Pacific cites *Crown Pac. v. Occupational Safety & Health Rev. Comm'n*, 197 F.3d 1036 (9th Cir. 1999). In *Crown Pac.*, two forest products company employees were unloading a two-piece rim wheel which had just been repaired by a tire-repair shop when the rim-wheel exploded and launched a component into one employee's chest, killing him on impact. *Id*. at 1037. Following the incident, an OSHA compliance officer cited Crown for violating 29 C.F.R. § 1910.177, a regulation that imposes "certain safety procedures and training requirements upon employers whose employees 'service' multi-piece rim wheels." *Id*. at 1038. The Ninth Circuit reasoned that the substantive requirements of § 1910.177 only apply to employers whose employees engage in the servicing of multi-piece and single piece rim wheels and, because Crown was not engaged in that work and had contracted with a third-party to do that work, the regulation did not apply. *Id*. at 1038–040. Accordingly, the Ninth Circuit held that § 1910.177 cannot be applied to employers "whose employees are not engaged in any mounting and demounting activities." *Id*. at 1040.

Using *Crown Pac.* as support, Union Pacific argues that it is not an employer engaged in any sort of multi-piece or single-piece rim wheel mounting and demounting activity which means § 1910.177 is inapplicable and, by extension, O'Conner's failure to train claim brought under that regulation is meritless. ECF No. 50 at 19. In response, O'Conner attempts to argue that *Crown Pac.* only applies to incidents involving multi-piece wheels and that, here, a single-piece wheel was involved which means that *Crown Pac.* did not exactly address the present issue. ECF No. 51 at 24, 25. Although O'Conner correctly points out that *Crown Pac.* dealt with a different type of wheel, such fact does not change the Ninth Circuit's holding as to what types of employers § 1910.177 affects; employers whose employees are engaged in any mounting and demounting activities. *See Crown Pac.,* 197 F.3d at 1040. Here, it is undisputed that Union Pacific is not engaged in the business of mounting and demounting wheels. It is further undisputed that Union

Pacific had contracted with an independent third-party tire-repair shop to service the tire. Under nearly identical facts, the Ninth Circuit in *Crown Pac.* held the regulation did not apply because that employee's act of sliding a tire off a pickup truck was not related to mounting or demounting activity. *Id*. Here then, O'Conner's act of removing the tire cannot be viewed as activity related to the act of mounting or demounting.

Because (1) Union Pacific is not engaged in the business of mounting or demounting rim wheels on large vehicles; (2) O'Conner's actions were not related to any mounting or demounting activity; and (3) Union Pacific contracted with a third-party tire-repair shop to perform the wheel's mounting or demounting related servicing, the Court finds that 29 C.F.R. § 1910.177 is not applicable as a matter of law. For these reasons, § 1910.177 cannot be the basis on which O'Conner argues Union Pacific failed to train him. Accordingly, the Court grants Union Pacific's motion for partial summary judgment on this issue. However, notwithstanding 29 C.F.R. § 1910.177's inapplicability, O'Conner has produced sufficient evidence that meets the slight or minimal proof standard for FELA negligence cases, as noted above, and a jury trial is warranted.

### IV.   CONCLUSION

IT IS THEREFORE ORDERED that Defendant Union Pacific's motion for summary judgment, or, in the alternative, partial summary judgment (ECF No. 50) is **GRANTED in part** and **DENIED in part** in accordance with this Order. Union Pacific's motion for summary judgment and its request for an evidentiary hearing are DENIED while its alternative motion for partial summary judgment is GRANTED on the issue of 29 C.F.R. § 1910.177's inapplicability.

IT IS SO ORDERED.

DATED this 29th day of February, 2024.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE